WEINSTEIN & RILEY, P.S.
Aaron M. Waite, Bar ID: 8992
3703 W. 6200 S.
Salt Lake City, Utah 84129
Telephone: 702-507-6403
Email: aaronw@w-legal.com
Attorneys for Movant

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>GREGG SHEPPARD *aka* GREGORY LAWRENCE SHEPPARD,<br><br><br>               Debtor. | Bankruptcy Case No. 18-27139<br><br>Chapter 13 |

### MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND CO-DEBTOR STAY

U.S. Bank National Association, not individually but solely as Trustee for BlueWater Investment Trust 2018-1, its successors and assigns (hereafter called "Movant"), hereby moves for relief from the automatic stay of 11 U.S.C. §362, for entry of an order terminating the automatic stay and co-debtor stay to allow Movant to enforce its rights against the collateral described below on the following grounds:

### Jurisdiction and Venue

1.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334.

2.      This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(G).

3.      Venue of the Motion in this District is proper pursuant to 28 U.S.C. § 1409(a).

### Predicates for Relief

4.      This Motion is premised on Section 362(d) of the Bankruptcy Code and is a contested matter within the meaning of Bankruptcy Rules 4001 and 9014.

47842309

**Causes Exists to Lift the Stay**

5.      On August 26, 1998, GREGG SHEPPARD ("Debtor") borrowed $180,000.00 from First Union Home Equity Bank, N.A. ("Original Lender"), pursuant to a 20-year fixed interest rate promissory note bearing an initial interest rate of 7.79% (the "Note"). The monthly principal and interest payment was $1,482.44. A copy of the Note is attached as Exhibit A.

6.      To secure repayment of the Note, the Debtor and Marybeth Sheppard executed a Deed of Trust (the "Deed of Trust") granting Original Lender a first priority security interest in property located 10906 S. Jason Dr., Sandy, UT 84094 ("the Property"). A copy of the Deed of Trust, including the legal description of the Property, is attached as Exhibit B.

7.      Original Lender caused the Deed of Trust to be recorded on September 3, 1998, at book 8086, page 0335 in Salt Lake County, State of Utah.

8.      On August 16, 2018, WELLS FARGO BANK, N.A., SUCCESSOR BY MERGER TO WACHOIVA BANK OF DELAWARE, N.A., FORMERLY KNOWN AS FIRST UNION NATIONAL BANK OF DELAWARE, SUCCESSOR BY MERTER TO FIRST UNION HOME EQUITY BANK, N.A. assigned the Deed of Trust to Movant.  A copy of the assignment is attached as Exhibit C.

9.      The Note was endorsed in blank by Original Lender. Movant has the Note in its possession.

10.      On September 25, 2018, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. On the amended Schedule D, filed on October 10, 2018, the Debtor included an undisputed obligation in the amount of $313,300.00 owed to Movant for the Property.  A copy of Schedule D is attached hereto as Exhibit D.

11.      On December 4, 2018, Movant filed a proof of claim asserting a claim of $133,373.99. See Claim No. 23-1.  There is also a second trust deed on the Property.

47842309

12.    The Debtor filed a Chapter 13 plan with the Court expressing the intention to repay certain arrears through the plan and otherwise to continue to make the payments required by the Note and the Mortgage. A copy of the confirmed Chapter 13 plan is attached hereto as Exhibit E.

13.    The Debtor is now in default eight (8) post-petition payments beginning with the payment due on October 1, 2018. The current unpaid arrears as of May 1, 2019 totals $10,782.04, as shown in the post-petition payment ledger attached hereto as Exhibit F.

ARGUMENT

FAILURE TO MAKE MULTIPLE PAYMENTS
CONSTITUTES CAUSE FOR STAY RELIEF

14.    Movant's records reflect that Debtor is delinquent with respect to post-petition payments. Failure to make multiple post-petition payments on a secured obligation constitutes cause to terminate the stay to permit foreclosure. Section 362(d)(1) of the Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay –
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

15.    Movant is not adequately protected.  Cause is not defined in the Bankruptcy Code, and must be determined on a case by case basis based on an examination of the totality of circumstances. *Mac Donald v. Mac Donald (In re Mac Donald),* 755 F.2d 715, 717 (9th Cir.1985); *Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer),* 405 B.R. 915, 921 (9th Cir.BAP2009); *In re Reitnauer,* 152 F.3d 341, 343 n. 4 (5th Cir.1998); *In re Mendoza,* 111 F.3d 1264 (5th Cir.1997).

16.    A debtor's failure to make post-petition mortgage payments as they become due in a chapter 13 case may constitute prima facie "cause" for relief from the automatic stay under section 362(d)(1). *Americredit Fin. Servs. Inc. v. Nichols (In re Nichols)*, 440 F.3d 850, 856 (6th

Cir. 2006); *In re Neals,* 459 B.R. 612, 620 (Bankr. D.SC 2011); *Ellis v. Parr (In re Ellis),* 60

B.R. 432, 435 (9th Cir.BAP 1985); *In re Miano,* 261 B.R. 391, 392-93 (Bankr. D. N.J.

2001)(dicta); *In re Oare,* 181 B.R. 16, 19 (Bankr. N.D.Y.Y. 1995); *Lomas Mortg. USA, Inc. v.*

*Elmore (In re Elmore),* 94 B.R. 670, 678 (Bankr.C.D.Cal.1988); *In re Davis,* 64 BB.R. 358

(Bankr. S.D.N.Y. 1986); *In re Marter,* 61 B.R. 271 (Bankr. E.D.Pa. 1986); *In re Shahid,* 27 B.R.

673 (S.D. Ohio 1982).

17.    Under these authorities stay relief is not automatic merely because the debtor has

missed plan payments; the Court must examine the facts to determine whether cause exists.

Relevant factors include whether the default is material, whether the debtor has the ability to

make the plan payments and cure the arrears and whether the default was caused by

circumstances beyond the debtor's control.  Debtor is also not in compliance with the confirmed

plan.

18.    The arrears are material within the context of this case and the delinquency has

persisted for many months without explanation. The Debtor has not attempted to communicate

with Movant to reach an accommodation and has not responded to Movant's attempt to contact

their counsel, nor have they moved to modify the Plan to obtain relief due to circumstances

beyond their control. Under these facts, cause exists to terminate the stay.

19.    Attached are redacted copies of documents that support the claim, such as

promissory notes, mortgages and security agreements in support of right to seek relief from the

automatic stay and foreclose if necessary.

20.    Movant also seeks relief from the co-debtor stay under 11 USC 1301, to the

extent one exists due to a non-debtor having executed the Deed of Trust.

47842309

## CONCLUSION

WHEREFORE, for the reasons set forth above, Movant requests that the Court enter an order (i) lifting the Automatic Stay so that Movant may exercise its rights under applicable law as to the Premises, including but not limited to foreclosure and (ii) granting such other and further relief as the Court deems just and proper.

Dated: June 5, 2019

/s/ Aaron M Waite
_____
WEINSTEIN & RILEY, P.S.
Aaron M. Waite, Bar ID: 8992
3703 W. 6200 S.
Salt Lake City, Utah 84129
Telephone: 702-507-6403
Email: aaronw@w-legal.com
Attorneys for Movant

47842309

## CERTIFICATE OF MAILING

I, the undersigned, certify under penalty of perjury pursuant to 28 U.S.C. Sec. 1746 that on June 5, 2019, I electronically filed the foregoing document with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users and will be served through the CM/ECF system or were served through regular mail.

**Debtor:**
Gregg Sheppard
aka Gregory Lawrence Sheppard
10906 Jason Drive
Sandy, UT 84094

**Attorney for Debtor:**
Lon Jenkins tr
405 South Main Street, Suite 600
Salt Lake City, UT 84111

**Chapter 13 Trustee:**
Lon Jenkins tr
405 South Main Street, Suite 600
Salt Lake City, UT 84111

DATED: June 5, 2019

By:  _/s/ Jody Reeves_
       An employee of Weinstein & Riley, P.S.

6

47841252

Exhibit "A"

Exhibit "A"

I HEREBY CERTIFY THAT THIS IS A TRUE AND
CORRECT COPY OF THE ORIGINAL INSTRUMENT

BY _____ 12/12/18

August 26, 1998

$180,000.00                                                                    SANDY, UT

## 10906 S JASON DR  SANDY UT,  84094

FOR VALUE RECEIVED, I, the undersigned (jointly and severally) promise to pay **FIRST UNION HOME EQUITY BANK, N. A.** national banking association organized and existing under the laws of the United States of America, ("Note Holder"), or order, the principal sum of **One Hundred Eighty Thousand** Dollars **($180,000.00)** with interest on the unpaid principal balance from the date of this Note, until paid, at the rate of **7.79%** percent per annum.

## PAYMENTS

I will make payments as indicated below:

**[ x ]   MONTHLY INSTALLMENT PAYMENTS OF PRINCIPAL AND INTEREST**

Beginning **09/28/1998**, I will make **240** consecutive monthly installment payments of principal and interest of **$1,482.44** on the **28th** day of each month.  I will make these payments on the same day of each succeeding month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Principal and interest shall be payable in lawful money of the United States of America, at the offices of Note Holder in Charlotte, North Carolina (or at such other place as the Note Holder may designate in writing).  In applying installments under this Note, Note Holder will apply all amounts received first to all interest accrued on the date the payment is credited, then to the unpaid principal balance and then to other charges, if any as stated in this Note until the entire indebtedness, evidenced by this Note, is fully paid, except that any remaining indebtedness, if not sooner paid, shall be due and payable on **August 28, 2018**.

**[ ]   INTEREST ONLY PAYMENTS AND MONTHLY INSTALLMENT PAYMENTS OF PRINCIPAL AND INTEREST**

I will make _____ payments of **interest only** of _____
Dollars   ($_____)   at   the   yearly   rate   of   _____%   beginning
_____.  During this time if I pay only the amount listed above, my principal balance will not decrease.

Beginning _____, I will make _____ consecutive monthly installment payments of **principal and interest** of _____
Dollars ($_____) on the _____ day of each month.  I will make these payments on the same day of each succeeding month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Principal and interest shall be payable in lawful money of the United States of America, at the offices of Note Holder in Charlotte, North Carolina (or at such other place as the Note Holder may designate in writing).  In applying installments under this Note, Note Holder will apply all amounts received first to all interest accrued on the date the payment is credited, then to the unpaid principal balance and then to other charges, if any as stated in this Note until the entire indebtedness, evidenced by this Note, is fully paid, except   that   any   remaining   indebtedness,   if   not   sooner   paid,   shall   be   due   and   payable   on
_____.

**[ ]   HOME IMPROVEMENT CONSTRUCTION LOAN INTEREST PAYMENTS AND MONTHLY INSTALLMENT PAYMENTS OF PRINCIPAL AND INTEREST**

I will make _____ payments of **interest only** at the yearly rate of _____% on the monies actually advanced.  I will make these interest payments beginning _____ and I will receive special billing for these payments.

each succeeding month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Principal and interest shall be payable in lawful money of the United States of America, at the offices of Note Holder in Charlotte, North Carolina (or at such other place as the Note Holder may designate in writing). In applying installments under this Note, Note Holder will apply all amounts received first to all interest accrued on the date the payment is credited, then to the unpaid principal balance and then to other charges, if any, as stated in this Note until the entire indebtedness, evidenced by this Note, is fully paid, except that any remaining indebtedness, if not sooner paid, shall be due and payable on

_____.

This Note represents my present and future obligation to repay present and future advances to be made by the Lender pursuant to a Home Improvement Construction Loan Agreement executed by the Lender and me. The maximum amount of present and future obligations which may be represented by this Note is $_____. The Lender may, at its option and upon my request, extend the period within which the future advances will be made. The making of future advances hereunder up to the amount of $_____ outstanding at any one time is obligatory however, such future advances are subject to the terms and provisions of the Home Improvement Construction Loan Agreement.

This Note is for home improvement construction financing followed by permanent financing at the completion of the home improvement construction period. During the first _____ months of the loan, monies will be advanced to me for construction of improvements in accordance with the Home Improvement Construction Loan Agreement that I am signing with this Note. After construction of the improvements is completed, the loan shall become a permanent loan.

In the event all monies are advanced prior to the end of the _____ months, I understand that I may be requested by Note Holder to amend the Note to provide for the monthly payment date to change to allow the principal and interest payments to begin within 30 days following the last advance.

Not withstanding anything to the contrary contained herein, I understand that if the improvements to be constructed as provided in the Home Improvement Construction Loan Agreement are not completed by the first day of the _____ month following the first advance, or if I fail to perform any promises or agreements in the Home Improvement Construction Loan Agreement, I will be in default under this Note and the Note Holder upon providing such notices as required by law, can demand immediate repayment of the entire amount of outstanding principal and interest due, and Note Holder shall have no further obligation to convert this loan to a permanent loan as described above.

[ ]   **MONTHLY INSTALLMENT PAYMENTS OF PRINCIPAL AND INTEREST WITH BALLOON PAYMENT**

Beginning _____, I will make _____ consecutive monthly installment payments of principal and interest of _____
Dollars ($_____) on the _____ day of each month and one final payment of
_____ Dollars
($_____) plus all accrued interest.   I will make these payments on the same day of each succeeding month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Principal and interest shall be payable in lawful money of the United States of America, at the offices of Note Holder in Charlotte, North Carolina (or at such other place as the Note Holder may designate in writing).  In applying installments under this Note, Note Holder will apply all amounts received first to all interest accrued on the date the payment is credited, then to the unpaid principal balance and then to other charges, if any as stated in this Note until the entire indebtedness, evidenced by this Note, is fully paid, except that any remaining indebtedness, if not sooner paid, shall be due and payable on

_____.

In the event of a default in the payment of any installment due on this Note, or a default in the performance of any covenant or condition in the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") securing this Note, or a default in the performance of the obligations imposed by any Security Instrument constituting a lien superior to the Security Instrument securing this Note, the Note Holder of this Note shall have the right and option to declare the entire unpaid balance of this within indebtedness due and payable at once and to foreclose any Security Instrument securing this Note.  Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of a subsequent default.

In the event that the Borrower fails to pay any installment at the time when the same becomes due, and the installment is overdue in excess of fifteen (15) days, Borrower shall pay a "late charge" of four percent (4%) of the overdue installment. In applying installments under this Note, Note Holder will apply all installments received first to any past due installments, then to the current installment due.  The Note Holder may collect a processing fee for each check which is

**[ X ]**  If checked, if I make a full prepayment, I will pay a prepayment penalty of **2%** of the balance if I pay off this loan within **3** years after the first payment of principal.   Any prepayment will be applied to the outstanding principal balance after payment of all interest and other charges through the date of such prepayment.  If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes.   If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due.  The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

**[  ]**  If checked, I may make a prepayment without penalty in whole or in part at any time.  Any prepayment will be applied to the outstanding principal balance after payment of all interest  and other charges through the date of such prepayment.  If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes.     If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due.  The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

In the event it becomes necessary to refer this Note to an attorney-at-law for collection, or if this debt or any part hereof be collected by an attorney or legal proceedings of any kind, the Note Holder will have the right to be paid back by the undersigned for all of its costs and expenses in enforcing this Note the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

All endorsers, sureties and guarantors and I further consent to any and all extensions of time, renewals, waivers or modifications which may be granted or consented to by the Note Holder as to the time of payment or any other provision of this Note.  If this Note will result in a second lien on my home and if an extension, renewal or modification is made, I agree to pay a charge, as additional interest, of the greater of $50.00 or one-quarter (1/4) of one (1%) percent of the loan balance then outstanding.  Presentment, notice of dishonor, and protest are hereby waived by all makers, sureties, guarantors, and endorsers hereof.  This Note is the joint and several obligation of each maker and shall be binding upon them and their heirs, successors and assigns.

This Note is secured by a Security Instrument of even date herewith executed by the undersigned and constituting a lien on real property described therein.

_Laura L. Bowers_
Witness

_____ [SEAL]
GREGG L. SHEPPARD

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A. SUCCESSOR BY MERGER WITH
WACHOVIA BANK OF DELAWARE, N.A.

BY _Georgiana M Sieleni_
GEORGIANA M. SIELENI
VICE PRESIDENT LOAN DOCUMENTATION

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A. SUCCESSOR BY MERGER WITH
WACHOVIA BANK OF DELAWARE, N.A.

BY _____
GEORGIANA M. SIELENI
VICE PRESIDENT LOAN DOCUMENTATION

Large Bank Licensing, MS B-8
250 E Street, S.W.
Washington, DC 20219

June 27, 2000

Ms. Courtney D. Allison
Assistant General Counsel
Legal Division
First Union Corporation
One First Union Center (0630)
Charlotte, North Carolina 28288

Dear Ms. Allison:

This letter is the official certification of the Comptroller of the Currency (OCC) of the merger of
First Union Bank of Delaware, Wilmington, Delaware, FDIC Certificate Nr. 27382, into and
under the charter of First Union Home Equity Bank, National Association, Charlotte, North
Carolina, Charter Nr. 22559, with the resulting bank titled First Union National Bank of
Delaware with its headquarters located at 920 King Street, Wilmington, Delaware, effective June
27, 2000.

This letter is also the official authorization given to First Union National Bank of Delaware,
Charter Nr. 22559, to operate the former branches of First Union Bank of Delaware as branches
at the sites indicated in the attachment to this letter. Please furnish a copy of this certificate to
personnel responsible for branch administration.

This letter also serves to officially authorize the resulting bank, First Union National Bank of
Delaware, Charter Nr. 22559, to exercise fiduciary powers.

The OCC also authorizes the resulting bank, should the merger occur between Call Report dates,
to recalculate its legal lending limit. The new lending limit should be calculated by using data
from the last Call Report of the individual banks filed prior to consummating the merger, as
adjusted for the combination. The resulting bank will then file a new Call Report and begin
calculating its legal lending limit according to 12 C.F.R. 32.4(a) at the end of the quarter
following consummation of the merger.

In the event of questions, I may be reached at (202) 874-5060 or by e-mail at:
largebanks@occ.treas.gov.

Sincerely,



Richard T. Erb
Licensing Manager

2000-ML-02-0006

# Exhibit "B"

Exhibit "B"

Account No. ████████████

This instrument was prepared by:

**FIRST UNION HOME EQUITY BANK, N. A.**
**1000 LOUIS ROSE PLACE**
**2ND FLOOR, SUITE B**
**CHARLOTTE NC 28262**

# DEED OF TRUST

THIS DEED OF TRUST is made this day of **August 26, 1998**, among the Grantor, **GREGG L. SHEPPARD** and **MARYBETH SHEPPARD** (herein "Borrower"), and KATHIE CHAHANOVICH, (herein "Trustee"); and the Beneficiary, **FIRST UNION HOME EQUITY BANK, N. A.,** a national banking association organized and existing under the laws of the United States of America, whose address is **CONS - 14 0361 CHARLOTTE, NC 28288** (herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. **$180,000.00**, which indebtedness is evidenced by Borrower's note dated **August 26, 1998** and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of indebtedness, if not sooner paid, due and payable on **August 28, 2018;**

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby grant and convey to Trustee in trust, with power of sale the following described property located in the County of **SALT LAKE**, State of Utah:

which has the address of **10906 S JASON DR SANDY UT 84094**

(herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances pertaining thereto and rents therefrom all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property."

**Any rider ("Rider") attached hereto and executed of even date is incorporated herein and the covenant and agreements of the Rider shall amend and supplement the covenants and agreements of this Deed of Trust, as if the Rider were a part hereof.**

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

BK8086PG0329

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and all late charges as provided in the Note. This Deed of Trust secures payment of said Note according to its terms, which are incorporated herein by reference.

2. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraph 1 hereof shall be applied by Lender first to interest due on the Note, second to the principal due on the Note, and then to late charges due on the Note.

3. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations, under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

4. **Hazard Insurance.** a) Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and any other hazards, including floods or flood, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 6.

b) All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt to the insurance carrier and Lender. Lender may make proof of loss if not made promptly to Borrower.

c) Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened. the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

d) Except as provided in subparagraph 4(e) below, should partial or complete destruction or damage occur to the Property, Borrower hereby agrees that any and all instruments evidencing insurance proceeds received by Lender as a result of said damage or destruction, shall be placed in a non-interest bearing escrow account with Lender. At Lender's discretion, Lender may release some or all of the proceeds from escrow after Borrower presents Lender with a receipt(s), invoice(s), written estimates(s) or other document(s) acceptable to Lender which relates to the repair and/or improvements of the Property necessary as a result of said damage and/or destruction. Absent an agreement to the contrary, Lender shall not be required to pay Borrower any interest on the proceeds held in the escrow account. Any amounts remaining in the account after all repairs and/or improvements have been made to the Lender's satisfaction, shall be applied to the sums secured by this Deed of Trust, Deed to Secure Debt, or Mortgage. Borrower further agrees to cooperate with Lender by endorsing all, checks, drafts and/or other instruments evidencing insurance proceeds; and any necessary documents. Should Borrower fail to provide any required endorsement and/or execution within thirty (30) days after Lender sends borrower notice that Lender has received an instrument evidencing insurance proceeds, or document(s) requiring Borrower's signature, Borrower hereby authorizes Lender to endorse said instrument and/or document(s) on Borrowers behalf, and collect and apply said proceeds at Lender's option, either to restoration or repair of the Property or to sums secured by this Deed of Trust, Deed to Secure Debt, or Mortgage. It is not the intention of either party that this escrow provision, and/or Lender's endorsement or execution of an instrument(s) and/or document(s) on behalf of Borrower create a fiduciary or agency relationship between Lender and Borrower.

e) Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 16 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument.

BK 8086 PG 0330

5. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

6. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such actions as is necessary to protect Lender's interest.

Any amounts disbursed by Lender pursuant to this paragraph 6, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 6 shall require Lender to incur any expense or take any action hereunder.

7. **Inspection.** As permitted by applicable law, Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

8. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

9. **Borrower Not Released; Forbearance By Lender Not a Waiver.** The Borrower shall remain liable for full payment of the principal and interest on the Note (or any advancement or obligation) secured hereby, notwithstanding any of the following: (a) The sale of all or a part of the premises, (b) the assumption by another party of the Borrower's obligations hereunder, (c) the forbearance or extension of time for payment or performance of any obligation hereunder, whether granted to Borrower or a subsequent owner of the property, and (d) the release of all or any part of the premises securing said obligations or the release of any party who assumes payment of the same. None of the foregoing shall in any way affect the full force and effect of the lien of this Deed of Trust or impair Lender's right to a deficiency judgment (in the event of foreclosure) against Borrower or any party assuming the obligations hereunder.

Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

10. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 15 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note: (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Lender under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

11. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by first class mail addressed to Borrower or the current owner at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and any other person personally liable on this Note as these person's names and addresses appear in the Lender's records at the time of giving notice and (b) any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

12. **Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflicts shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

BK8085PG0331

**13. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note, this Deed of Trust and Rider(s) at the time of execution or after recordation hereof.

**14. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**15. Transfer of the Property or a Beneficial Interest in Borrower, Assumption.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at Lender's option, for any reason, declare all the sums secured by this Deed of Trust to be immediately due and payable. However, this option shall not be exercised by Lender if exercise is prohibited by Federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

This Deed of Trust may not be assumed by a purchaser without the Lender's consent. If an assumption is allowed, the Lender may charge an assumption fee and require the person(s) assuming the loan to pay additional charges as authorized by law.

## ARTICLE II

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**16. Acceleration; Remedies.** Upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums under the Note secured by this Deed of Trust, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without demand or notice and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees and costs of documentary evidence, abstracts and title reports.

If the power of sale is invoked, Trustee shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied, with special warranty of title. The recitals in Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to reasonable Trustee's, attorneys' fees and costs of title evidence, (b) to all sums secured by this Deed of Trust; (c) the excess, if any, to the person or persons legally entitled thereto or to the county clerk of the county in which the sale took place.

**17. Assignment of Rents, etc; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents issues and profits of the Property, provided that Borrower shall, prior to acceleration under paragraph 16 hereof or abandonment of the Property, have the right to collect and retain such sums as they become due and payable.

Upon acceleration under paragraph 16 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents issues and profits of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. The receiver shall be liable to account only for those rents actually received.

BK 8086 PG 0332

**18. Loan Charges.** If the loan secured by this Deed of Trust is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (1) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (2) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment under the Note.

**19. Legislation.** If, after the date hereof, enactment or expiration of applicable laws have the effect either of rendering the provisions of the Note, the Deed of Trust or any Rider, unenforceable according to their terms, or all or any part of the sums secured hereby uncollectible, as otherwise provided in this Deed of Trust, Rider, or the Note, or of diminishing the value of Lender's security, then Lender, at Lender's option, may declare all sums secured by the Deed of Trust to be immediately due and payable.

**20. Reconveyance or Release.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any. Lender, at Lender's option, may allow a partial release of the Property on terms acceptable to Lender and Lender may charge a release fee.

**21. Waiver of Homestead.** Borrower hereby waives all right of homestead exemption in the Property.

**22. Substitute Trustee.** Lender may from time to time at Lender's discretion, and without cause or notice, remove Trustee and appoint a Successor Trustee to any Trustee appointed hereunder. Without conveyance of the Property, the Successor Trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**23. Remedies Upon Borrower's Default Under The Home Improvement Construction Loan Agreement (if applicable).** In addition to the events upon which Lender may declare Borrower in default under this Security Instrument, including failure to pay when due any sums under the Note secured by this Security Instrument, Lender may declare Borrower in default under this Security Instrument if any of the following events occurs:   (a) if Borrower fails to make payments of principal or interest on the due date or fails to comply with the other terms and conditions of the Home Improvement Construction Loan Agreement, the Note or this Security Instrument; (b) if Borrower dies or becomes insolvent; (c) if a petition is filed or other proceedings are started by or against Borrower under the Federal Bankruptcy Code or any state insolvency statute, (d) if a receiver is appointed or a writ or order of attachment, levy or garnishment is issued against Borrower or Borrower's property, assets or income; (e) if Borrower permits any other lienholder to gain or appear to gain priority over Lender, except whatever first mortgage is outstanding on the Property at the time of recording Lender's Security Instrument; (f) if the Property is condemned or subject to eminent domain proceedings, or is totally or partially destroyed by fire or other hazards or any proceeding is commenced which materially affects Lender's interest in the Property; (g) if the secured note for any prior mortgage or lien on the Property is in default; (h) if Borrower allows the collateral to deteriorate or ceases to occupy the Property as Borrower's principal residence; (i) if Borrower misrepresents any information in the loan application for a home improvement loan or if there is any material adverse change in Borrower's financial condition from the date of the application; (j) if Borrower has failed to disclose any environmental condition or hazard which adversely affects    the    Property;    or    (k)    if    the    Improvements    are    not    substantially    completed    by

Upon the declaration of an event of a default, Lender's obligation to make further advances under the Home Improvement Construction Loan Agreement shall terminate and Lender, at Lender's option, upon providing Borrower with such notices as are required by law, may declare all the sums secured by this Security Instrument to be immediately due and payable, and may invoke the remedies provided in this Security Instrument. However, this option will not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

**24. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge.    If Borrower learns, or is notified by any governmental or regulatory authority, that any removal, or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 24, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 24, "Environmental law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection.

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____ |SEAL|
GREGG L SHEPPARD

_____ |SEAL|
MARYBETH SHEPPARD


STATE OF UTAH, _Salt Lake_ COUNTY SS:

On this _26th_ day of _August 1998_ , personally appeared before me _Gregg L Sheppard and Marybeth Sheppard_ , the signer(s) of the above instrument, who duly acknowledged to me that _t_ he _y_ executed the same.

My Commission Expires: _12/8/98_

LAURAL L BOWERS
Notary Public
STATE OF UTAH
My Comm. Expires DEC 8, 1998
1647 W 4700 S

_____
Notary Public residing at:

### REQUEST FOR RECONVEYANCE

To Trustee:

The undersigned is the holder of the Note or Notes secured by this Deed of Trust. Said Note or Notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said Notes or Notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.


Date: _____    _____

BK8086PG0334

'8 17:23  Meridian Title Company  P.03/06

'C File No.        61833-SK
3AL DESCRIPTION

### Exhibit "A"



t 301, EDENBROOK ESTATES SUBDIVISION #3, according to the official plat
ereof as recorded in the office of the Salt Lake County Recorder.

7077934
09/03/98  4:34 PM      11.00
NANCY WORKMAN
RECORDER, SALT LAKE COUNTY, UTAH
MERIDIAN TITLE
REC BY:V ASHBY        ,DEPUTY - WI

BK8086PG0335

# Exhibit "C"

# Exhibit "C"

***Send All Notices to Assignee***

RECORDING REQUESTED BY:
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD
SUITE 200
EAGAN, MN 55121

AND WHEN RECORDED MAIL TO:
WELLS FARGO BANK, N.A.
ASSIGNMENT TEAM
1000 BLUE GENTIAN RD #200
MAC: N9289-018
EAGAN, MN 55121-4400

8/16/2018 9:38:00 AM $10.00
Book - 10703 Pg - 5172
ADAM GARDINER
Recorder, Salt Lake County, UT
INGEO SYSTEMS
BY: eCASH, DEPUTY - EF 1 P.

## ASSIGNMENT OF DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **WELLS FARGO BANK, N.A., SUCCESSOR BY MERGER TO WACHOVIA BANK OF DELAWARE, N.A., FORMERLY KNOWN AS FIRST UNION NATIONAL BANK OF DELAWARE, SUCCESSOR BY MERGER TO FIRST UNION HOME EQUITY BANK, N.A.**, 1 HOME CAMPUS , DES MOINES, IA 50328 , by these presents does convey, assign, transfer and set over to: **US BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR BLUEWATER INVESTMENT TRUST 2018-1** , 2121 ROSECRANS AVE. , EL SEGUNDO, CA 90245 , the following described Deed of Trust, with all interest, all liens, and any rights due or to become due thereon. Said Deed of Trust for **$180000.00** is recorded in the State of UTAH County of **Salt Lake** Official Records, dated **08/26/1998** and recorded on **09/03/1998** , as Instrument No.⬛ in Book No⬛, at Page No.⬛
Original Trustor/Grantor: **GREGG SHEPPARD AND MARYBETH SHEPPARD**
Original Beneficiary: **FIRST UNION HOME EQUITY BANK, N.A.**
Property Address: 10906 S JASON DR SANDY, UT 84094
Legal Description: **LOT 301, EDENBROOK ESTATES SUBDIVISION #3, ACCORDING TO THE OFFICIAL PLAT THEREOF AS RECORDED IN THE OFFICE OF THE SALT LAKE COUNTY RECORDER.**
PIN #: 28-17-479-008-0000

Date: **08/16/2018** .

**WELLS FARGO BANK, N.A., SUCCESSOR BY MERGER TO WACHOVIA BANK OF DELAWARE, N.A., FORMERLY KNOWN AS FIRST UNION NATIONAL BANK OF DELAWARE, SUCCESSOR BY MERGER TO FIRST UNION HOME EQUITY BANK, N.A.**

*May Nhia Vang*

MAY NHIA VANG, Vice President Loan Documentation

STATE OF MN
COUNTY OF Dakota } s.s.

On 08/16/2018 before me, **LAVENDAH J KWAMBOKA OKWOYO** , a Notary Public, personally appeared **MAY NHIA VANG , Vice President Loan Documentation** of **WELLS FARGO BANK, N.A., SUCCESSOR BY MERGER TO WACHOVIA BANK OF DELAWARE, N.A., FORMERLY KNOWN AS FIRST UNION NATIONAL BANK OF DELAWARE, SUCCESSOR BY MERGER TO FIRST UNION HOME EQUITY BANK, N.A.** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

*Lavendah J Kwamboka Okwoyo*

LAVENDAH J KWAMBOKA OKWOYO, Notary Public
Notary Public for said state and county
Expires: 01/31/2022



LAVENDAH J KWAMBOKA OKWOYO
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2022

eRecorded

# Exhibit "D"

# Exhibit "D"

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Gregg Sheppard** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF UTAH |
| Case number (if known) | **18-27139** |

☐ Check if this is an amended filing

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

### Part 1:    List All Secured Claims

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A **Amount of claim** Do not deduct the value of collateral. | Column B **Value of collateral that supports this claim** | Column C **Unsecured portion** If any |
|---|---|---|---|
| | $6,913.00 | $11,425.00 | $0.00 |

**2.1  Gateway One Lending &**
Creditor's Name

Describe the property that secures the claim:
**2013 Honda CRV 88,000 miles**
**Kelly Blue Book**
**Private Party**
**Good Condition**

160 N Riverview Dr Ste 1
Anaheim, CA 92808
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred  **Opened 05/15  Last Active 8/27/18**

Last 4 digits of account number  **3795**

---

| | | | |
|---|---|---|---|
| **2.2  Loan Servicing Group** | | $11,300.00 | $313,300.00 | $0.00 |

**2.2  Loan Servicing Group**
Creditor's Name

Describe the property that secures the claim:
**10906 Jason Drive Sandy, UT 84094**
**Salt Lake County**

7660 H Fay Ave #405
La Jolla, CA 92037
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit

---

Official Form 106D          Schedule D: Creditors Who Have Claims Secured by Property          page 1 of 2

Debtor 1  **Gregg Sheppard**

First Name      Middle Name      Last Name

Case number (if know)   **18-27139**

☐ Check if this claim relates to a
community debt

☐ Other (including a right to offset) _____

Date debt was incurred _____     Last 4 digits of account number _____

| 2.3 | **Moutain America** | | |
|---|---|---|---|

Creditor's Name

Describe the property that secures the claim:      **$2,300.00**   **$3,128.00**   **$0.00**

**2005 Honda Pilot 222,000 miles
Kelley Blue Book
Private Party
Good Condition**

**PO Box 9001
West Jordan, UT 84084**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ Check if this claim relates to a
community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred _____     Last 4 digits of account number _____

| 2.4 | **Selene Finance** | | |
|---|---|---|---|

Creditor's Name

Describe the property that secures the claim:      **$4,500.00**   **$313,300.00**   **$0.00**

**10906 Jason Drive Sandy, UT 84094
Salt Lake County**

**9990 Richmond, Suite
400 South
Houston, TX 77042**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred _____     Last 4 digits of account number _____

| Add the dollar value of your entries in Column A on this page. Write that number here: | **$25,013.00** |
|---|---|
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | **$25,013.00** |

**Part 2:**   **List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐   Name, Number, Street, City, State & Zip Code

**Chase A. Adams
Adams Law PLLC
765 East 9000 South, Suite A-1
Sandy, UT 84094**

On which line in Part 1 did you enter the creditor?  **2.2**

Last 4 digits of account number ___

# Exhibit "E"

# Exhibit "E"

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Gregg  Sheppard** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | **DISTRICT OF UTAH** |
| Case number: | **18-27139** |
| (If known) | |

☐ Check if this is an amended plan, and list below the sections of the plan that have been changed.

Official Form 113

# Chapter 13 Plan

12/17

---

| Part 1: | Notices |
|---|---|

**To Debtor(s):** This form sets out options that may be appropriate in some cases, but the presence of an option on the form does not indicate that the option is appropriate in your circumstances or that it is permissible in your judicial district. Plans that do not comply with local rules and judicial rulings may not be confirmable.

*In the following notice to creditors, you must check each box that applies*

**To Creditors:** **Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated.**

You should read this plan carefully and discuss it with your attorney if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you oppose the plan's treatment of your claim or any provision of this plan, you or your attorney must file an objection to confirmation at least 7 days before the date set for the hearing on confirmation, unless otherwise ordered by the Bankruptcy Court. The Bankruptcy Court may confirm this plan without further notice if no objection to confirmation is filed. See Bankruptcy Rule 3015. In addition, you may need to file a timely proof of claim in order to be paid under any plan.

The following matters may be of particular importance. *Debtors must check one box on each line to state whether or not the plan includes each of the following items. If an item is checked as "Not Included" or if both boxes are checked, the provision will be ineffective if set out later in the plan.*

| 1.1 | A limit on the amount of a secured claim, set out in Section 3.2, which may result in a partial payment or no payment at all to the secured creditor | ☐ Included | ☑ Not Included |
|---|---|---|---|
| 1.2 | Avoidance of a judicial lien or nonpossessory, nonpurchase-money security interest, set out in Section 3.4. | ☐ Included | ☑ Not Included |
| 1.3 | Nonstandard provisions, set out in Part 8. | ☑ Included | ☐ Not Included |

| Part 2: | Plan Payments and Length of Plan |
|---|---|

**2.1** **Debtor(s) will make regular payments to the trustee as follows:**

**$400** per **Month** for **60** months

Debtor has sufficient equity in his home located at 10906 Jason Drive, Sandy, Utah 84094.  On or before September 30, 2020, Debtor will refinance and/or sale his home to fund the chapter 13 plan.

*Insert additional lines if needed.*

If fewer than 60 months of payments are specified, additional monthly payments will be made to the extent necessary to make the payments to creditors specified in this plan.

**2.2** **Regular payments to the trustee will be made from future income in the following manner.**

*Check all that apply:*

☐ Debtor(s) will make payments pursuant to a payroll deduction order.
☑ Debtor(s) will make payments directly to the trustee.
☐ Other (specify method of payment):

**2.3 Income tax refunds.**

| Debtor | **Gregg Sheppard** | | Case number | **18-27139** |
|---|---|---|---|---|

*Check one.*

☐     Debtor(s) will retain any income tax refunds received during the plan term.

☐     Debtor(s) will supply the trustee with a copy of each income tax return filed during the plan term within 14 days of filing the return and will turn over to the trustee all income tax refunds received during the plan term.

☑     Debtor(s) will treat income refunds as follows:

For the next three tax years of 2018, 2019, and 2020, the Debtors shall pay into the Plan the net total amount of yearly state and federal tax refunds that exceed $1,000 for each of the tax years identified in such section. If in an applicable tax year, the Debtors receive an Earned Income Tax Credit ("EIC") and/or an Additional Child Tax Credit ("ACTC") on their federal tax return, the Debtors may retain up to a maximum of $2,000 in tax refunds for such year based on a combination of the $1,000 allowed above plus the amount of the EIC and/or ACTC credits up to an additional $1,000. On or before April 30 of each applicable tax year, the Debtors shall provide the Trustee with a copy of the first two pages of filed state and federal tax returns. The Debtors shall pay required tax refunds to the Trustee no later than June 30 of each such year. However, the Debtors are not obligated to pay tax overpayments that have been properly offset by a taxing authority. Tax refunds paid into the Plan may reduce the plan term to no less than the Applicable Commitment Period, but in no event, shall the amount paid into the Plan be less than thirty-six (36) Plan Payments plus all annual tax refunds to be paid into the plan.

**2.4 Additional payments.**

*Check one.*

☑     **None**. *If "None" is checked, the rest of § 2.4 need not be completed or reproduced.*

**2.5**     The total amount of estimated payments to the trustee provided for in §§ 2.1 and 2.4 is $<u>24,000.00</u>.

| Part 3: | Treatment of Secured Claims |
|---|---|

**3.1**     **Maintenance of payments and cure of default, if any.**

*Check one.*

☐     **None**. *If "None" is checked, the rest of § 3.1 need not be completed or reproduced.*

☑     The debtor(s) will maintain the current contractual installment payments on the secured claims listed below, with any changes required by the applicable contract and noticed in conformity with any applicable rules. These payments will be disbursed either by the trustee or directly by the debtor(s), as specified below. Any existing arrearage on a listed claim will be paid in full through disbursements by the trustee, with interest, if any, at the rate stated. Unless otherwise ordered by the court, the amounts listed on a proof of claim filed before the filing deadline under Bankruptcy Rule 3002(c) control over any contrary amounts listed below as to the current installment payment and arrearage. In the absence of a contrary timely filed proof of claim, the amounts stated below are controlling. If relief from the automatic stay is ordered as to any item of collateral listed in this paragraph, then, unless otherwise ordered by the court, all payments under this paragraph as to that collateral will cease, and all secured claims based on that collateral will no longer be treated by the plan. The final column includes only payments disbursed by the trustee rather than by the debtor(s).

| Name of Creditor | Collateral | Current installment payment (including escrow) | Amount of arrearage (if any) | Interest rate on arrearage (if applicable) | Monthly payment on arrearage | Estimated total payments by trustee |
|---|---|---|---|---|---|---|
| **Gateway One Lending &** | **2013 Honda CRV** | **$268.00**<br>Disbursed by:<br>☐ Trustee<br>☑ Debtor(s) | Prepetition:<br>**$0.00** | **0.00%** | **$0.00** | **$0.00** |
| **Loan Servicing Group** | **10906 Jason Drive Sandy, UT 84094 Salt Lake County** | **$200.00**<br>Disbursed by:<br>☐ Trustee<br>☑ Debtor(s) | Prepetition:<br>**$0.00** | **0.00%** | **$0.00** | **$0.00** |
| **Moutain America** | **2005 Honda Pilot** | **$111.00**<br>Disbursed by:<br>☐ Trustee<br>☑ Debtor(s) | Prepetition:<br>**$0.00** | **0.00%** | **$0.00** | **$0.00** |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Debtor | **Gregg Sheppard** | | | Case number | **18-27139** | | |
|---|---|---|---|---|---|---|---|

| Name of Creditor | Collateral | Current installment payment (including escrow) | Amount of arrearage (if any) | Interest rate on arrearage (if applicable) | Monthly payment on arrearage | Estimated total payments by trustee |
|---|---|---|---|---|---|---|
| Selene Finance | **10906 Jason Drive Sandy, UT 84094  Salt Lake County** | $1,570.00 Disbursed by: ☐ Trustee ☑ Debtor(s) | Prepetition: $0.00 | 0.00% | $0.00 | $0.00 |

*Insert additional claims as needed.*

**3.2**    **Request for valuation of security, payment of fully secured claims, and modification of undersecured claims.** *Check one.*

☑    **None.** *If "None" is checked, the rest of § 3.2 need not be completed or reproduced.*

**3.3**    **Secured claims excluded from 11 U.S.C. § 506.**

*Check one.*
☑    **None.** *If "None" is checked, the rest of § 3.3 need not be completed or reproduced.*

**3.4**    **Lien avoidance.**

*Check one.*
☑    **None.** *If "None" is checked, the rest of § 3.4 need not be completed or reproduced.*

**3.5**    **Surrender of collateral.**

*Check one.*
☑    **None.** If "None" is checked, the rest of § 3.5 need not be completed or reproduced.

| Part 4: | **Treatment of Fees and Priority Claims** |
|---|---|

**4.1**    **General**

Trustee's fees and all allowed priority claims, including domestic support obligations other than those treated in § 4.5, will be paid in full without postpetition interest.

**4.2**    **Trustee's fees**

Trustee's fees are governed by statute and may change during the course of the case but are estimated to be **10.00**% of plan payments; and during the plan term, they are estimated to total $**2,400.00**.

**4.3**    **Attorney's fees.**

The balance of the fees owed to the attorney for the debtor(s) is estimated to be $**2,375.00**.

**4.4**    **Priority claims other than attorney's fees and those treated in § 4.5.**

*Check one.*
☐    **None.** *If "None" is checked, the rest of § 4.4 need not be completed or reproduced.*
☑    The debtor(s) estimate the total amount of other priority claims to be **$0.00**

**4.5**    **Domestic support obligations assigned or owed to a governmental unit and paid less than full amount.**

*Check one.*
☑    **None.** *If "None" is checked, the rest of § 4.5 need not be completed or reproduced.*

| Part 5: | **Treatment of Nonpriority Unsecured Claims** |
|---|---|

**5.1**    **Nonpriority unsecured claims not separately classified.**

| Debtor | **Gregg Sheppard** | Case number | **18-27139** |
|---|---|---|---|

Allowed nonpriority unsecured claims that are not separately classified will be paid, pro rata. If more than one option is checked, the option providing the largest payment will be effective. *Check all that apply.*

☐    The sum of $ _____ .

☑    ____**100**__% of the total amount of these claims, an estimated payment of $__**124,000.00**__ .

☐    The funds remaining after disbursements have been made to all other creditors provided for in this plan.

If the estate of the debtor(s) were liquidated under chapter 7, nonpriority unsecured claims would be paid approximately $**258,769.50**. Regardless of the options checked above, payments on allowed nonpriority unsecured claims will be made in at least this amount.

**5.2**      **Maintenance of payments and cure of any default on nonpriority unsecured claims.** *Check one.*

       ☑    **None.** *If "None" is checked, the rest of § 5.2 need not be completed or reproduced.*

**5.3**      **Other separately classified nonpriority unsecured claims.** *Check one.*

       ☑    **None.** *If "None" is checked, the rest of § 5.3 need not be completed or reproduced.*

| Part 6: | **Executory Contracts and Unexpired Leases** |
|---|---|

**6.1**      **The executory contracts and unexpired leases listed below are assumed and will be treated as specified. All other executory contracts and unexpired leases are rejected.** *Check one.*

       ☑    **None.** *If "None" is checked, the rest of § 6.1 need not be completed or reproduced.*

| Part 7: | **Vesting of Property of the Estate** |
|---|---|

**7.1**      **Property of the estate will vest in the debtor(s) upon**
*Check the appliable box:*

☑    plan confirmation.

☐    entry of discharge.

☐    other: _____

| Part 8: | **Nonstandard Plan Provisions** |
|---|---|

**8.1**      **Check "None" or List Nonstandard Plan Provisions**

       ☐    **None.** *If "None" is checked, the rest of Part 8 need not be completed or reproduced.*

*(1) Adequate Protection Payments. If the debtor seeks to pay Adequate Protection Payments to holders of secured claims, the requirements of Local Rule 2083-1(d) apply.*

*(2) Applicable Commitment Period. The applicable commitment period for the Plan is 60 months.*

*(3) Direct Payment of Claims. If the debtor elects to pay a claim directly and that claim is not one which the Plan allows to be paid directly, the direct payment designation will be listed below as a nonstandard provision. For all claims the debtor elects to pay directly, Local Rule 2083-2(i)(4) applies.*

*(4) Third-Party Payment of Claims. If the Plan provides that a nondebtor shall pay a claim directly, the third-party payment designation will be listed below as a nonstandard provision. For all claims the Plan provides will be paid by a third-party, Local Rule 2083-2(k)(1) may apply. Upon request, the debtor must furnish the name and contact information for the third-party payor.*

*Claims to Be Paid by a Third Party:*

*(5) Lien Avoidance Under § 522(f). If the debtor moves to avoid a lien under §522(f), Local Rule 2083-2(j) applies.*

*(6) Interest on Oversecured Claims. If the debtor proposes to pay an oversecured claim a nonstandard rate of interest or interest accruing prior to confirmation of the Plan, such nonstandard treatment must be specifically stated below, including the identity of the secured creditor and the proposed interest rate accrual.*

| Debtor | **Gregg Sheppard** | Case number | **18-27139** |
|---|---|---|---|

*Claims to be paid Interest on Oversecured Claims:*

*(7) The Local Rules of Practice of the United States Bankruptcy Court for the District of Utah are incorporated by reference in the Plan.*

*(8) Any order confirming this Plan shall constitute a binding determination that the Debtors have timely filed all of the information required by 11 U.S.C. § 521(a)(1).*

*(9) Any allowed secured claim filed by a taxing authority not otherwise provided for by this plan shall be paid in full as part of Class 5 as set forth in Local Rule 2083-2(e), with interest at the rate set forth in the proof of claim or at 0% per annum if no interest rate is specified.*

**Part 9:    Signature(s):**

**9.1    Signatures of Debtor(s) and Debtor(s)' Attorney**

*If the Debtor(s) do not have an attorney, the Debtor(s) must sign below, otherwise the Debtor(s) signatures are optional.  The attorney for Debtor(s), if any, must sign below.*

X    **/s/ Gregg Sheppard**                                    X
**Gregg Sheppard**                                                Signature of Debtor 2
Signature of Debtor 1

Executed on    **October 10, 2018**                    Executed on

X    **/s/ Ryan E. Simpson**                    Date    **October 10, 2018**
**Ryan E. Simpson 11300**
Signature of Attorney for Debtor(s)

**By filing this document, the Debtor(s), if not represented by an attorney, or the Attorney for Debtor(s) also certify(ies) that the wording and order of the provisions in this Chapter 13 plan are identical to those contained in Official Form 113, other than any nonstandard provisions included in Part 8.**

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor | **Gregg Sheppard** | | Case number | 18-27139 |
|---|---|---|---|---|

---

## Exhibit: Total Amount of Estimated Trustee Payments

The following are the estimated payments that the plan requires the trustee to disburse. If there is any difference between the amounts set out below and the actual plan terms, the plan terms control.

| | | | |
|---|---|---|---|
| a. | **Maintenance and cure payments on secured claims** *(Part 3, Section 3.1 total)* | | **$0.00** |
| b. | **Modified secured claims** *(Part 3, Section 3.2 total)* | | **$0.00** |
| c. | **Secured claims excluded from 11 U.S.C. § 506** *(Part 3, Section 3.3 total)* | | **$0.00** |
| d. | **Judicial liens or security interests partially avoided** *(Part 3, Section 3.4 total)* | | **$0.00** |
| e. | **Fees and priority claims** *(Part 4 total)* | | **$4,775.00** |
| f. | **Nonpriority unsecured claims** *(Part 5, Section 5.1, highest stated amount)* | | **$19,225.00** |
| g. | **Maintenance and cure payments on unsecured claims** *(Part 5, Section 5.2 total)* | | **$0.00** |
| h. | **Separately classified unsecured claims** *(Part 5, Section 5.3 total)* | | **$0.00** |
| i. | **Trustee payments on executory contracts and unexpired leases** *(Part 6, Section 6.1 total)* | | **$0.00** |
| j. | **Nonstandard payments** *(Part 8, total)* | + | **$0.00** |
| | **Total of lines a through j** | | **$24,000.00** |

# Exhibit "F"

# Exhibit "F"

SELENE
FINANCE

## Loan Information

| | | | |
|---|---|---|---|
| Loan Number: | ▮▮▮▮▮ | Origination Date: | 8/26/1998 |
| Loan Type: | Conventional | Acquisition Date: | 8/14/2018 |
| Investor: | ▮▮▮▮ | Maturity Date: | 10/1/2030 |
| MI Company: | | Is Insured: | No |
| Due Date: | 4/1/2018 | | |

## Property & Borrower Information

| | | | |
|---|---|---|---|
| Borrower Name: | GREGG L SHEPPARD | Co-Borrower Name: | MARYBETH SHEPPARD |
| Borrower SSN: | ▮▮▮▮▮ | Co-Borrower SSN: | ▮▮▮▮▮ |
| Prop Address: | 10906 S JASON DR | Prop Type: | Single Family Residence |
| | SANDY, UT 84094 | Inspection Date: | 4/5/2019 |
| Mailing Address: | 10906 S JASON DR | Occupancy Status: | Tenant Occupied |
| | SANDY, UT 84094 | Represented by Attorney: | Yes |

**Additional Borrowers/Non-Obligors**

## Debt Breakdown - Payoff

| | | | |
|---|---|---|---|
| Good to Date: | 5/7/2019 | Escrow Balance: | 0.00 |
| Principal Balance: | 126,997.48 | Suspense Balance: | 796.03 |
| Deferred Principal Balance: | 0.00 | Restricted Escrow Balance: | 0.00 |
| Delinquent Interest: | 11,704.99 | Per Diem Amount: | 26.26 |
| Escrow Advance: | 2,848.62 | | |
| Corporate Advance Balance: | 900.00 | | |
| Late Fees: | 0.00 | | |
| Pending Taxes: | 0.00 | | |
| Pending Hazard: | 0.00 | | |
| Pending MI: | 0.00 | | |
| Recording Fee: | 10.00 | | |
| **Total Debt:** | **141,665.06** | | |

## Bankruptcy Information

| | | | |
|---|---|---|---|
| BK Case # | 18-27139 | BK Notice Rec'd Date: | |
| BK Chapter: | 13 | BK Setup Date: | 9/28/2018 |
| BK Filing Date: | 9/25/2018 | Creditor Meeting Date: | 11/2/2018 |
| Filing State: | UT | POC Bar: | 12/4/2018 |
| BK Post petition Due Date: | 10/1/2018 | POC Filed Date: | 12/3/2018 |
| | | POC Amount: | 10,575.92 |

## Attorney Info

| | | | |
|---|---|---|---|
| Trustee Attorney: | LON JENKINS | FC Attorney: | |
| Debtor Attorney: | RYAN E. SIMPSON | FC Sale Date Scheduled: | |
| Region Code: | SALT LAKE CITY | | |
| BK Court Code: | | | |

**SELENE** FINANCE

## Reinstatement Quotes

| Based on contractual due date | | Based on post petition due date | |
|---|---|---|---|
| **Good thru date** | 5/7/2019 | **Good thru date** | 5/7/2019 |
| **Due Date** | 4/1/2018 | **Post Petition Due Date** | 10/1/2018 |
| **Missed Payments** | 22,319.16 | **Missed Payments** | 11,578.07 |
| **Late Charge Fees** | 0.00 | **Late Charge Fees** | |
| **Corporate Advance** | 900.00 | **Corporate Advance** | 0.00 |
| **Escrow Advance** | 0.00 | **Post Petition Suspense Balance** | 796.03 |
| **Suspense** | 796.03 | | |
| **Total Reinstatement** | **22,423.13** | **Total Reinstatement** | **10,782.04** |

**SELENE** FINANCE

## Payment Information

| | | | |
|---|---|---|---|
| **UPB Amount:** | 126,997.48 | **Due Date:** | 4/1/2018 |
| **Total Monthly Payment:** | 1,551.61 | **Interest Rate:** | 8.0000% |
| **P&I Amount:** | 1,337.23 | **Term:** | 386 |
| **Escrow Amount:** | 214.38 | **Original Loan Amount:** | 180,000.00 |
| **Payment Frequency:** | 12 | | |
| **Deferred Amount:** | 0.00 | | |
| **Missed Payment Due Date Term:** | 4/1/2018 - 5/1/2019 | | |

### Missed Payments Breakdown

| Date Range | P&I Amount | T&I Amount | PITI Amount | # missed payments | Missed Payment Total Amount |
|---|---|---|---|---|---|
| 4/1/2018 - 4/1/2018 | 1,337.23 | 214.38 | 1,551.61 | 1 | 1,551.61 |
| 5/1/2018 - 9/1/2018 | 1,337.23 | 235.16 | 1,572.39 | 5 | 7,861.95 |
| 10/1/2018 - 4/1/2019 | 1,337.23 | 275.97 | 1,613.20 | 7 | 11,292.40 |
| 5/1/2019 - 5/1/2019 | 1,337.23 | 268.65 | 1,605.88 | 1 | 1,605.88 |
| **Total Missed Payments** | | | | **14** | **22,311.84** |

## Payment Change History

| Effective Date | Principal & Interest Amt | Taxes & Insurance Amt | Total Payment | Interest Rate | Change Reason |
|---|---|---|---|---|---|
| 5/1/2019 | 1,337.23 | 268.65 | 1605.88 | 8.0000% | |
| 10/1/2018 | 1,337.23 | 275.97 | 1613.20 | 8.0000% | |
| 5/1/2018 | 1,337.23 | 235.16 | 1572.39 | 8.0000% | |
| 10/1/2017 | 1,337.23 | 214.38 | 1551.61 | 8.0000% | |

## Payment & Escrow Breakdown

| Tran Date | Due Date | Tran Description | Total Amount | Principal Amt | Interest Amt | Escrow Amt | Suspense Amt | NSF | UPB | Deferred UPB | Escrow Balance | Escrow Advance Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/10/19 | 4/1/18 | Irregular Pmt | 796.03 | 0.00 | 0.00 | 0.00 | 796.03 | 0.00 | 126,997.48 | 0.00 | 0.00 | 2,848.62 |
| 4/10/19 | 4/1/18 | Long Form Misapplication Rev | -796.03 | 0.00 | 0.00 | 0.00 | -796.03 | 0.00 | 126,997.48 | 0.00 | 0.00 | 2,848.62 |
| 12/13/18 | 4/1/18 | Long Form Misapplication Rev | -796.03 | 0.00 | 0.00 | 0.00 | -796.03 | 0.00 | 126,997.48 | 0.00 | 0.00 | 2,848.62 |
| 12/13/18 | 4/1/18 | Irregular Pmt | 796.03 | 0.00 | 0.00 | 0.00 | 796.03 | 0.00 | 126,997.48 | 0.00 | 0.00 | 2,848.62 |
| 11/8/18 | 4/1/18 | Escrow Adv Movement | 2,141.36 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 126,997.48 | 0.00 | 0.00 | 2,848.62 |
| 11/8/18 | 4/1/18 | County Tax | -2,141.36 | 0.00 | 0.00 | -2,141.36 | 0.00 | 0.00 | 126,997.48 | 0.00 | 0.00 | 2,848.62 |
| 10/2/18 | 4/1/18 | Irregular Pmt | 796.03 | 0.00 | 0.00 | 0.00 | 796.03 | 0.00 | 126,997.48 | 0.00 | 0.00 | 707.26 |
| 10/2/18 | 4/1/18 | Long Form Misapplication Rev | -796.03 | 0.00 | 0.00 | 0.00 | -796.03 | 0.00 | 126,997.48 | 0.00 | 0.00 | 707.26 |
| 9/28/18 | 4/1/18 | Irregular Pmt | 782.57 | 0.00 | 0.00 | 0.00 | 782.57 | 0.00 | 126,997.48 | 0.00 | 0.00 | 707.26 |
| 9/17/18 | 4/1/18 | Escrow Adv Refund | -214.38 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 126,997.48 | 0.00 | 0.00 | 707.26 |
| 9/17/18 | 4/1/18 | Pmt from Lockbox/Cashiering Wk/ACH Pmt | 0.00 | 487.33 | 849.90 | 214.38 | -1,551.61 | 0.00 | 126,997.48 | 0.00 | 0.00 | 707.26 |
| 9/13/18 | 3/1/18 | Irregular Pmt | 765.07 | 0.00 | 0.00 | 0.00 | 765.07 | 0.00 | 127,484.81 | 0.00 | 0.00 | 921.64 |
| 8/30/18 | 3/1/18 | Irregular Pmt | 800.00 | 0.00 | 0.00 | 0.00 | 800.00 | 0.00 | 127,484.81 | 0.00 | 0.00 | 921.64 |
| 8/17/18 | 3/1/18 | Loan Prin Bal Set-up | -127,484.81 | -127,484.81 | 0.00 | 0.00 | 0.00 | 0.00 | 127,484.81 | 0.00 | 0.00 | 921.64 |
| 8/17/18 | 3/1/18 | Restricted Monetary Adjust | 921.64 | 0.00 | 0.00 | 921.64 | 0.00 | 0.00 | 127,484.81 | 0.00 | 0.00 | 921.64 |
| 8/14/18 | | Loan Removed per Release of Servicing (Tran 058) | 0.00 | 127,484.81 | 0.00 | 921.64 | 0.00 | 0.00 | | | | |
| 8/14/18 | | Late Charge Adjust | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 8/14/18 | | Late Charge Adjust | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 8/14/18 | | Late Charge Adjust | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 8/6/18 | | Hazard Ins | -1,177.00 | 0.00 | 0.00 | -1,177.00 | 0.00 | 0.00 | | | | |
| 8/1/18 | | Predistributed Pmt (e.g. loan closing) / Escrow posting for mods | 0.00 | 0.00 | 4.29 | 0.00 | 0.00 | 0.00 | | | | |
| 7/31/18 | | Irregular Pmt | 0.00 | 0.00 | 533.84 | 214.38 | 0.00 | 0.00 | | | | |
| 7/30/18 | | Irregular Pmt | 752.51 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |

Loan Number:

Run Date: 5/7/2019

**SELENE** FINANCE

**Payment & Escrow Breakdown**

| Tran Date | Due Date | Tran Description | Total Amount | Principal Amt | Interest Amt | Escrow Amt | Suspense Amt | NSF | UPB | Deferred UPB | Escrow Balance | Escrow Advance Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/13/18 | | Pmt from Lockbox/Cashiering Wk/ACH Pmt | 0.00 | 0.00 | 800.00 | 0.00 | 0.00 | 0.00 | | | | |
| 7/12/18 | | Irregular Pmt | 800.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 7/1/18 | | Pmt from Lockbox/Cashiering Wk/ACH Pmt | 0.00 | 0.00 | 582.23 | 214.38 | 0.00 | 0.00 | | | | |
| 7/1/18 | | Pmt from Lockbox/Cashiering Wk/ACH Pmt | 0.00 | 0.00 | 3.39 | 0.00 | 0.00 | 0.00 | | | | |
| 6/29/18 | | Irregular Pmt | 800.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 6/17/18 | | Pmt from Lockbox/Cashiering Wk/ACH Pmt | 0.00 | 0.00 | 755.00 | 0.00 | 0.00 | 0.00 | | | | |
| 6/15/18 | | Irregular Pmt | 755.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 6/1/18 | | Irregular Pmt | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 6/1/18 | | Irregular Pmt | 0.00 | 0.00 | 1,337.23 | 214.38 | 0.00 | 0.00 | | | | |
| 5/31/18 | | Irregular Pmt | 1,500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 4/30/18 | | Irregular Pmt | 1,551.61 | 0.00 | 1,337.23 | 214.38 | 0.00 | 0.00 | | | | |
| 4/1/18 | | Pmt from Lockbox/Cashiering Wk/ACH Pmt | 0.00 | 0.00 | 277.60 | 214.38 | 0.00 | 0.00 | | | | |
| 3/30/18 | | Irregular Pmt | 491.98 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 3/12/18 | | Pmt from Lockbox/Cashiering Wk/ACH Pmt | 340.35 | 0.00 | 154.59 | 185.76 | 0.00 | 0.00 | | | | |
| 3/12/18 | | Pmt from Lockbox/Cashiering Wk/ACH Pmt | 1,059.63 | 0.00 | 1,059.63 | 0.00 | 0.00 | 0.00 | | | | |
| 3/12/18 | | Pmt from Lockbox/Cashiering Wk/ACH Pmt | 1,182.64 | 0.00 | 1,182.64 | 0.00 | 0.00 | 0.00 | | | | |
| 3/12/18 | | Long Form Misapplication Rev | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 3/11/18 | | Pmt from Lockbox/Cashiering Wk/ACH Pmt | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 3/1/18 | | Irregular Pmt | 0.00 | 0.00 | 183.21 | 185.76 | 0.00 | 0.00 | | | | |
| 2/28/18 | | Irregular Pmt | 1,399.98 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 2/5/18 | | Irregular Pmt | 1,551.61 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 1/25/18 | | Hazard Ins | -595.04 | 0.00 | 0.00 | -595.04 | 0.00 | 0.00 | | | | |
| 1/2/18 | | Pmt from Lockbox/Cashiering Wk/ACH Pmt | 0.00 | 0.00 | 1,154.02 | 0.00 | 0.00 | 0.00 | | | | |
| 12/29/17 | | Irregular Pmt | 0.00 | 0.00 | 60.22 | 185.76 | 0.00 | 0.00 | | | | |
| 12/29/17 | | Interest on Escrow Dep | 0.08 | 0.00 | 0.00 | 0.08 | 0.00 | 0.00 | | | | |
| 12/28/17 | | Irregular Pmt | 1,400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 12/4/17 | | Predistributed Pmt (e.g. loan closing) / Escrow posting for mods | 0.00 | 0.00 | 1,277.01 | 0.00 | 0.00 | 0.00 | | | | |
| 12/1/17 | | Irregular Pmt | 0.00 | 0.00 | 0.00 | 185.76 | 0.00 | 0.00 | | | | |
| 11/30/17 | | Irregular Pmt | 1,400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 11/13/17 | | County Tax | -2,139.00 | 0.00 | 0.00 | -2,139.00 | 0.00 | 0.00 | | | | |
| 10/31/17 | | Predistributed Pmt (e.g. loan closing) / Escrow posting for mods | 0.00 | 0.00 | 1,337.23 | 0.00 | 0.00 | 0.00 | | | | |
| 10/30/17 | | Irregular Pmt | 1,400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 10/11/17 | | Long Form Misapplication Rev | 0.00 | 0.00 | -1,337.23 | 0.00 | 0.00 | 0.00 | | | | |
| 10/11/17 | | Long Form Rev for Returned Check | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 10/2/17 | | Predistributed Pmt (e.g. loan closing) / Escrow posting for mods | 0.00 | 0.00 | 1,337.23 | 0.00 | 0.00 | 0.00 | | | | |
| 10/1/17 | | Irregular Pmt | 1,399.98 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 9/14/17 | | Late Charge Adjust | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 7/5/17 | | Late Charge Adjust | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 5/16/17 | | Late Charge Adjust | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 5/15/17 | | Irregular Pmt | 1,522.99 | 467.85 | 869.38 | 185.76 | 0.00 | 0.00 | | | | |
| 4/14/17 | | Irregular Pmt | 1,522.99 | 492.66 | 844.57 | 185.76 | 0.00 | 0.00 | | | | |

**SELENE** FINANCE

## Payment & Escrow Breakdown

| Tran Date | Due Date | Tran Description | Total Amount | Principal Amt | Interest Amt | Escrow Amt | Suspense Amt | NSF | UPB | Deferred UPB | Escrow Balance | Escrow Advance Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/15/17 | | Irregular Pmt | 1,522.99 | 742.61 | 594.62 | 185.76 | 0.00 | 0.00 | | | | |
| 3/15/17 | | Prin Curtailment (Sys gen by Tran 073) | 0.01 | 0.01 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 2/22/17 | | Irregular Pmt | 1,504.49 | 0.00 | 1,337.23 | 167.26 | 0.00 | 0.00 | | | | |
| 2/22/17 | | Irregular Pmt | 1,504.49 | 935.35 | 401.88 | 167.26 | 0.00 | 0.00 | | | | |
| 1/25/17 | | Long Form Rev for Returned Check | 0.00 | -681.89 | -655.34 | -167.26 | 0.00 | 0.00 | | | | |
| 1/15/17 | | Irregular Pmt | 1,504.49 | 681.89 | 655.34 | 167.26 | 0.00 | 0.00 | | | | |
| 12/30/16 | | Interest on Escrow Dep | 0.11 | 0.00 | 0.00 | 0.11 | 0.00 | 0.00 | | | | |
| 12/26/16 | | Pmt from Lockbox/Cashiering Wk/ACH Pmt | -1,505.49 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 12/26/16 | | Pmt from Lockbox/Cashiering Wk/ACH Pmt | 1,505.49 | 254.31 | 1,082.92 | 167.26 | 0.00 | 0.00 | | | | |
| 12/25/16 | | Irregular Pmt | 1,505.49 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| 12/20/16 | | Long Form Rev for Returned Check | 0.00 | -482.30 | -854.93 | -167.26 | 0.00 | 0.00 | | | | |
| 12/15/16 | | Irregular Pmt | 1,504.49 | 482.30 | 854.93 | 167.26 | 0.00 | 0.00 | | | | |
| 11/18/16 | | County Tax | -2,134.71 | 0.00 | 0.00 | -2,134.71 | 0.00 | 0.00 | | | | |
| 11/15/16 | | Irregular Pmt | 1,504.49 | 479.15 | 858.08 | 167.26 | 0.00 | 0.00 | | | | |
| 10/16/16 | | Irregular Pmt | 1,504.49 | 447.52 | 889.71 | 167.26 | 0.00 | 0.00 | | | | |
| 9/15/16 | | Irregular Pmt | 1,504.49 | 444.51 | 892.72 | 167.26 | 0.00 | 0.00 | | | | |
| 8/15/16 | | Irregular Pmt | 1,504.49 | 441.51 | 895.72 | 167.26 | 0.00 | 0.00 | | | | |
| 8/4/16 | | Special Dep to Escrow Account | 75.52 | 0.00 | 0.00 | 75.52 | 0.00 | 0.00 | | | | |
| 7/15/16 | | Irregular Pmt | 1,504.49 | 467.34 | 869.89 | 167.26 | 0.00 | 0.00 | | | | |
| 6/15/16 | | Irregular Pmt | 1,504.49 | 435.40 | 901.83 | 167.26 | 0.00 | 0.00 | | | | |
| 5/15/16 | | Irregular Pmt | 1,504.49 | 461.46 | 875.77 | 167.26 | 0.00 | 0.00 | | | | |
| 4/15/16 | | Irregular Pmt | 1,504.49 | 429.36 | 907.87 | 167.26 | 0.00 | 0.00 | | | | |
| 3/15/16 | | Irregular Pmt | 1,504.49 | 484.86 | 852.37 | 167.26 | 0.00 | 0.00 | | | | |
| 2/15/16 | | Irregular Pmt | 1,517.56 | 423.21 | 914.02 | 180.33 | 0.00 | 0.00 | | | | |
| 1/15/16 | | Irregular Pmt | 1,517.56 | 419.07 | 918.16 | 180.33 | 0.00 | 0.00 | | | | |
| 1/10/16 | | Misc | -75.52 | 0.00 | 0.00 | -75.52 | 0.00 | 0.00 | | | | |
| 12/31/15 | | Interest on Escrow Dep | 0.10 | 0.00 | 0.00 | 0.10 | 0.00 | 0.00 | | | | |
| 12/15/15 | | Irregular Pmt | 1,517.56 | 444.59 | 892.64 | 180.33 | 0.00 | 0.00 | | | | |
| 11/15/15 | | Irregular Pmt | 1,517.56 | 412.04 | 925.19 | 180.33 | 0.00 | 0.00 | | | | |
| 11/12/15 | | County Tax | -2,007.14 | 0.00 | 0.00 | -2,007.14 | 0.00 | 0.00 | | | | |
| 10/15/15 | | Irregular Pmt | 1,517.56 | 439.00 | 898.23 | 180.33 | 0.00 | 0.00 | | | | |
| 9/15/15 | | Irregular Pmt | 1,517.56 | 436.13 | 901.10 | 180.33 | 0.00 | 0.00 | | | | |
| 8/16/15 | | Irregular Pmt | 1,517.56 | 373.43 | 963.80 | 180.33 | 0.00 | 0.00 | | | | |
| **Total** | | | **-78,441.46** | **10,418.70** | **32,376.96** | **-2,494.65** | **796.03** | **0.00** | | | | |

## Corporate Advances

| Tran Date | Reason code description | Amount |
|---|---|---|
| 1/9/2019 | BK ATTY. FEES | 250.00 |
| 1/9/2019 | BK ATTY. FEES | 300.00 |
| 12/12/2018 | OTHER | 350.00 |
| 9/7/2018 | OTHER | (2,391.25) |
| 8/23/2018 | OTHER | (179.00) |
| 8/20/2018 | OTHER | 2,570.25 |